IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| WANDA SAUVE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:12-cv-00046 |
| | ) | Chief Judge Haynes |
| v. | ) | |
| | ) | |
| SECURITAS SECURITY SERVICES, | ) | |
| USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M**

Plaintiff, Wanda Sauve, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), ("Title VII"), against the Defendant, Securitas Security Services USA, Inc., her former employer. Plaintiff asserts claims for age discrimination with allegations that the Defendant engaged in blatant age discrimination by terminating Plaintiff and other employees over the age of 45, all of whom are members of a protected class.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 23), contending, in sum, that Title VII does not afford protection for age discrimination and thus, Plaintiff's claim fails as a matter of law. In response, Plaintiff responded to Defendant's statement of undisputed material facts, but failed to file a response to Defendant's motion or memorandum.

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgment should be granted. Plaintiff asserts claims only for age discrimination and Title VII does not protect against age discrimination.

## A. Findings of Fact[1]

Sauve initially began working for Wackenhut as an administrative assistant in 1998 until she began working security functions in 2002. (Docket Entry No. 24, Defendant's Memorandum, attachment, Exhibit A thereto at ¶ 3). In 2007, Securitas acquired Wackenhut's contract to provide security for the General Motors site. Id. at ¶ 4, Thereafter, the Wackenhut security guards at the General Motors site, including Sauve, were converted to Securitas employees. Id. at ¶ 5. At the time Sauve began working for Defendant she was 55 years old. Id.

Sauve received warnings several times for failing to abide by company policies. On August 5, 2009, Sauve failed to fill out properly paperwork at the truck gate. Id. at ¶ 12. On September 8, 2009, Sauve wore an unauthorized belt to work in violation of the Securitas's uniform policy. Id. at ¶ 13. On July 2, 2010, Plaintiff began an argument with Billy Ray Johnson, one of her supervisors, after she believed Johnson was favoring another employee. Id. at ¶ 14. On September 17, 2010, Plaintiff left her post during a special event. Id. at ¶ 15. Based on this latter infraction, on October 6, 2010, Plaintiff was administered a final written warning for leaving her assigned post without proper relief or authorization from Supervision. Id. at ¶ 17. After this latter incident, Plaintiff wrote two letters to Samuel Lamar, Securitas's project manager. Id. at ¶¶ 17-18.

On April 27, 2011, Sauve was instructed to run tests on two of the sites security pumps. Soon

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Because Plaintiff did not file a response to Defendant's Statement of Undisputed Facts (Docket Entry No. 13) in accordance with Local Rule 56.01(c), Defendant's proffered statements of facts are undisputed for purposes of summary judgment, pursuant to Local Rule 56.01(g).

after, storms began to enter the area and Sauve asked Randy Golden, Assistant Fire Chief, if she could finish the tests after the storms cleared. Id. at ¶¶ 20-21. Sauve was told to continue the tests. Id. at 21. Sauve then contacted a Terry Wilcox, a friend who was an officer for the union for General Motors, but failed to contact the representative for the union for Securitas. Id. at ¶ 22. Later, Lamar received a telephone call from Pamela Stamps, the General Motors plant's Personnel Director, informing him that she had received a call from the General Motors Union President reporting a security officer was being forced to perform pump tests in bad weather. Id. at ¶ 23. Stamps explained to Lamar that her call was to inform him that an officer was contacting non-Securitas personnel to make complaints and that such attempts was causing problems for General Motors with the latter's union and was not appreciated. Id. Stamps had a second telephone call with Lamar, and stated that the Plant Manager, Terrie Burden, had now received a complaint about the other complaints from Securitas security. Id.

Securitas's Safety Statement policy requires that "[w]henever you identify an unsafe condition or health risk, report the matter to your supervisor or local branch management immediately." Id. at ¶ 25. Sauve signed the Safety Statement on December 28, 2006. Id.

After this incident, Lamar requested that Sauve provide a written statement about her contacts with General Motors employees Union, but Plaintiff refused. Id. at ¶ 27. Sauve was placed on Investigatory Suspension for her failure to follow a direct order and refusal to cooperate in an investigation. After her suspension, Sauve admitted to company tools in her vehicle that violated Securitas's policy. Id. at ¶ 30.

On May 10, 2011, Sauve met with Lamar, Battles and Patsy Pratt, the Local Union President where Sauve was provided a disciplinary sanctions. Plaintiff was ordered from the work site for her

3

failures to cooperate in an investigation and to follow a direct order as well as her removal of client property without permission. Id. at ¶ 32. Lamar stated that he had not dealt with any other employee with similar infractions to Sauve's infractions. Id. at ¶ 33.

Although Plaintiff was not terminated, Laverne Dixon scheduled an appointment to meet with Sauve about Securitas positions available in Nashville and the surrounding areas. Id. at ¶ 39. Sauve did not report for to the meeting and was subsequently terminated on February 10, 2012. Id. at ¶ 40-41. During 2011, out of its entire workforce of 67, Securitas employed 41 hourly individuals who were over 40 years old. Id. at ¶ 44. 18 of the 67 employees were older than Plaintiff. Id. at ¶ 45.

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

4

> otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989); <u>but see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

<u>Celotex</u>, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]... must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted); see also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

6

More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

* * *

Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252, 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) requiring each party to provide a statement of undisputed facts to which the opposing party must respond.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

8

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts

9

under the governing law?

For her age discrimination allegations,[2] Plaintiff's complaint asserts only claims under Title VII that expressly prohibits discrimination based upont an individual's race, color, religion, sex or national origin. Title VII "does not cover age discrimination claims." Clark v. City of Dublin, Ohio, 178 Fed. Appx. 522, 524, (6th Cir. 2006). Accordingly, the Court concludes that Plaintiff's age discrimination claims should be dismissed. In any event, the undisputed facts establish the Defendant's legitimate business reasons to terminate Plaintiff for insubordination and Plaintiff's proof fails to prove any pretext for those reasons. Plaintiff's age discrimination claim would also fail based upon the undisputed facts

For these reasons, the Court concludes that the defendant's motion for summary judgment should be granted.

An appropriate Order is filed herewith.

Entered this the 26th day of August, 2013.

William J. Haynes, Jr.
Chief Judge
United States District Judge

---

[2] Plaintiff's original and amended complaints refer only to age discrimination under Title VII. (Docket Entry Nos. 1 and 10), but the attachment to those complaints are Plaintiff's EEOC administrative charge that also checks boxes for race and sex discrimination, but the narrative of this documents lists only age discrimination. Plaintiff's theory of the case for the Case Management Order refers only to age discrimination and that "While the terminations we are aware of are predominantly female and Caucasian, there is no other major correlation other than age". (Docket Entry No. 18, Case Management Order No. 1 at 1-2)